UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALI AHMED OSMAN,

                  Petitioner,

    v.

TODD BLANCHE, *et al.*,

                  Respondents.

Case No. C26-2311-MLP

ORDER

Through counsel, Petitioner Ali Ahmed Osman filed a 28 U.S.C. § 2241 habeas petition challenging the lawfulness of his redetention by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. (Dkt. # 6.) Respondents filed a return (dkt. # 9), supported by a sworn declaration from U.S. Department of Homeland Security ("DHS") Deportation Officer Ian Bloom (dkt. # 10) and an unsworn declaration from Respondents' counsel, Peter H. Clark (dkt. # 11). Petitioner filed a traverse (dkt. # 12), supported by a sworn declaration from his counsel, Andrew Kennedy (dkt. # 12-1). Having considered the parties' submissions and the governing law, the Court GRANTS the petition (dkt. # 6).[1]

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 4.)

ORDER - 1

## I.    BACKGROUND[2]

Petitioner is a native and citizen of Somalia. On March 27, 2022, officials detained him and issued a Notice to Appear, charging a violation of 8 U.S.C. § 1182(a)(6)(A)(i). (Bloom Decl. ¶¶ 5-6.) On May 9, 2022, authorities released him on an Order of Release on Recognizance requiring that he obey all laws and warning that violations could result in his return to custody. (*Id.*, ¶ 7; Clark Decl., Ex. A.)

According to Officer Bloom, during routine system checks, Enforcement and Removal Operations ("ERO") learned that on December 14, 2024, the Kent Police Department arrested and charged Petitioner with Driving Under the Influence. (Bloom Decl., ¶ 8.) Seattle ERO then approved a custody redetermination. (*Id.*) On September 10, 2025, Petitioner appeared for a regularly scheduled ERO check-in. (*Id.*, ¶ 9) ERO took him into ICE custody and transferred him to the NWIPC, where he remains detained. (*Id.*, ¶¶ 9-11.) On December 9, 2025, Petitioner appeared before an Immigration Judge ("IJ") for a merits hearing. (*Id.*, ¶ 12.) The IJ denied all relief and ordered him removed to Somalia. (*Id.*) Petitioner reserved appeal but did not timely file one, and his removal order became final on January 9, 2026. (*Id.*, ¶¶ 12-13; Clark Decl., Exs. B-C.)

Officer Bloom states that on April 10, 2026, the Embassy of the Federal Republic of Somalia issued a travel document for Petitioner, expiring July 6, 2026. (Bloom Decl., ¶ 14.) Respondents repeatedly cite "Exhibit E" as that Somalian travel document. (Dkt. # 9 at 3, 6.) No such exhibit is attached to counsel's declaration. (*See* Clark Decl.)

---

[2] Many of the facts below are drawn from Deportation Officer Bloom's declaration. (Dkt. # 10.) Officer Bloom does not have firsthand knowledge of these events; he relies on his "review of [DHS] systems and records" and his "familiarity" with Petitioner's case. (*Id.*, ¶ 2.) The Court makes no findings as to whether these statements are true and correct.

ORDER - 2

On June 4, 2026, Officer Bloom avers officers escorted Petitioner to the airport to effectuate his removal to Somalia, but Petitioner refused to board the aircraft. (Bloom Decl., ¶ 15.) Petitioner disputes this account. He attests that he "was never shown a travel document and was told that he was to be deported to Kenya." (Kennedy Decl., ¶ 4.) He further states that after he reported feeling unwell, officers told him he would not be removed to Kenya that day and returned him to the NWIPC. (*Id.*, ¶ 5.) Petitioner declares that he never refused to board an aircraft, did not physically resist removal, and would have boarded had he been shown a valid Somali travel document. (*Id.*, ¶¶ 6-7.)

On July 11, 2026, officials served Petitioner with a Notice of Imminent Removal, which he allegedly refused to sign. (Bloom Decl., ¶ 16.) On July 15, 2026, DHS contacted the Somalian Embassy to seek reissuance of a travel document and asserts that it can promptly remove Petitioner once a new document is issued. (*Id.*, ¶¶ 17-18.)

## II.    LEGAL STANDARDS

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## III.    DISCUSSION

### A.    Petitioner's Detention Has Become Indefinite

As a noncitizen with a final order of removal, Petitioner is detained under 8 U.S.C. § 1231. Under § 1231(a), "when [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days (in this section

ORDER - 3

referred to as the 'removal period')" and "shall detain" him during that period. 8 U.S.C. § 1231(a)(1)(A), (a)(2)(A); *see* § 1231(a)(6) (authorizing continued detention of certain noncitizens after the removal period). Although § 1231 contains no explicit time limit, the Supreme Court presumes that detention for up to six months after a removal order becomes final is reasonable when related to effectuating removal. *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). After six months, once a detainee "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If removal is not reasonably foreseeable, "continued detention is no longer authorized by statute." *Id.* at 699.

Here, the record shows that Petitioner has been detained for nearly seven months following entry of his final removal order. (Dkt. # 9 at 2; Bloom Decl., ¶ 9.) His detention has thus exceeded the six-month period *Zadvydas* deems "presumptively reasonable." 533 U.S. at 701.

Petitioner contends his removal is not reasonably foreseeable because: (1) ICE has not obtained travel documents for his return to Somalia; (2) Somalia has not agreed to accept him; and (3) removal efforts are hampered by Somalia's Temporary Protected Status designation and a "Level 4 – Do not travel" advisory. (Dkt. # 6 at 7.) These circumstances "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

The burden therefore shifts to Respondents to produce evidence that removal is significantly likely in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701. Respondents do not meaningfully address this question. Instead, they rely on an assertedly expired travel document—referred to as "Exhibit E" but not in the record—and state only that they "have

ORDER - 4

already reached out to the Embassy to obtain another travel document" and that "[t]here is no reason to suspect that Somalia will not issue another document in the very near future." (Dkt. # 9 at 6-7.)

Even accepting Respondents' account that a Somali travel document issued on April 10, 2026, their own evidence shows that it expired on July 6, 2026. (Bloom Decl., ¶ 14.) An expired travel document cannot be used to effectuate removal. Thus, even if Respondents belatedly produced "Exhibit E," it would show only that Somalia once issued, and then allowed to lapse, a document that is now unusable. It would not establish that Petitioner's removal is presently feasible or significantly likely in the reasonably foreseeable future.

Nor do Respondents supply any other concrete evidence of likely removal. They provide no affidavit from Somali officials, no diplomatic correspondence, and no practice-based evidence showing that Somalia routinely or promptly reissues travel documents upon DHS request. Their assertion that there is "no reason to suspect" Somalia will not issue a new document "in the very near future" (dkt. # 9 at 7) is speculation, not evidence. Under *Zadvydas*, conjecture that a foreign government might act at some unspecified time does not satisfy the government's burden. *See, e.g.*, *Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025) (rejecting generalized assertions as insufficient to meet the *Zadvydas* burden).

Respondents also fail to address Petitioner's contention that Somalia's Temporary Protected Status designation and the State Department's Level 4 advisory impede or preclude removals to Somalia at this time. (*See generally* dkt. # 9.) Absent evidence that Somalia is currently accepting repatriations of similarly situated individuals and will issue Petitioner a valid travel document in the near term, Respondents have not rebutted Petitioner's showing that his removal is not reasonably foreseeable.

ORDER - 5

Respondents next argue that Petitioner is responsible for his continued detention because he has failed to cooperate with his removal. (Dkt. # 9 at 6-7.) That argument is unpersuasive for two reasons. First, the noncooperation theory is premised on a valid Somali travel document that is not in the record. Under *Zadvydas*, the government bears the burden to show that removal is reasonably foreseeable, and the most probative evidence is an actual, stamped travel document or emergency passport. *See* 533 U.S. at 701. Having represented that such a document exists yet failing to produce it, Respondents effectively ask the Court to credit an uncorroborated assertion while Petitioner remains detained beyond the presumptively reasonable period. *See Simmaphilavong v. Noem*, 2026 WL 593146, at *5 n.5 (W.D. Wash. Mar. 3, 2026) (noting prior instances where the government claimed to possess travel documents that did not in fact exist). And even if Respondents now produced the expired document, it still would not establish present removability or a significant likelihood of removal going forward.

Second, the remaining noncooperation evidence does not show that Petitioner is causing the delay. Respondents rely on Officer Bloom's account of the attempted removal and on a Notice of Imminent Removal that Petitioner allegedly refused to sign. (Bloom Decl., ¶¶ 15-16.) Petitioner, however, attests that he was never shown a Somali travel document, was told he would be removed to Kenya, and never refused to board nor physically resisted. (Kennedy Decl., ¶¶ 4-6.) He further declares that he would have complied had he been presented with a valid Somali travel document. (*Id.*, ¶ 7.) To the extent any of these points might be clarified by documents Respondents possess, no such records have been provided to the Court. On this record, the evidence does not support Respondents' conclusory assertion that Petitioner refused to cooperate. *Cf. Ghasedi v. Wamsley*, 2025 WL 3699705, at *6 (W.D. Wash. Dec. 1, 2025)

ORDER - 6

(government's bare assertion that the petitioner "was 'determined as not being cooperative in obtaining a travel document'" insufficient evidence to deny habeas petition).

Even if Officer Bloom's statement that Petitioner declined to sign a Notice of Imminent Removal is credited, that conduct does not constitute legally cognizable noncooperation. *See Kara v. Bondi*, 2026 WL 322772, at *4 (W.D. Wash. Feb. 6, 2026) (finding insufficient evidence of noncooperation where the only evidence was the government's bare assertion that the petitioner did not identify a third country for removal). Using Petitioner's failure to sign as evidence that he is at fault for his continued detention is therefore misplaced. Moreover, like the purported travel document, the notice itself is not attached and is not otherwise in the record. Once again, Respondents ask the Court to rely on unproduced documents.

The timing of the notice further undermines Respondents' position. Officer Bloom states that the notice was served on July 11, 2026—several days after the alleged travel document expired on July 6, 2026. (Bloom Decl., ¶¶ 14, 16.) If no valid Somali travel document existed at that time, removal was not in fact imminent. And if the notice contemplated removal to a third country instead of Somalia, that would further weaken Respondents' argument. As another court in this District has observed, if removal to a third country were lawful and genuinely contemplated, the government would not need the detainee's "acceptance" or consent to effectuate it. *See Boza-Rosales v. Blanche*, --- F. Supp. 3d ---, 2026 WL 1412456, at *3 (W.D. Wash. May 15, 2026).

In sum, Respondents' noncooperation argument rests on unproduced documents and disputed facts that, even if fully credited, do not establish that Petitioner is thwarting removal. Respondents have not met their burden under *Zadvydas* to show a significant likelihood of removal in the reasonably foreseeable future.

ORDER - 7

"Where Petitioner's detention is no longer reasonably related to removal and has become prolonged without adequate justification, it has become unlawful." *Majekaodunmi v. Scott*, 2026 WL 1283519, at *4 (W.D. Wash. May 11, 2026) (cleaned up); *see Zadvydas*, 533 U.S. at 701. A writ of habeas corpus is therefore warranted as to Petitioner's ongoing detention.[3]

### B.   Requests for Injunctive Relief

Federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). To obtain a permanent injunction, a party must show "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003).

#### 1.   Third-Country Removal

In addition to immediate release, Petitioner seeks an injunction prohibiting Respondents from removing him to a third country. (Dkt. # 6 at 29.) Respondents contend this claim is unripe because Petitioner "has not provided the Court with any evidence that Respondents seek to remove him to any country other than Somalia." (Dkt. # 9 at 9.) Petitioner has, however, offered evidence that Respondents attempted to remove him to Kenya. (Kennedy Decl., ¶¶ 4-6; *see also* dkt. # 12 at 7-14.) Coupled with Respondents' emphasis on his alleged refusal to sign a Notice of Imminent Removal—served after the supposed Somali travel document had expired, and thus significant only if removal to a third country was contemplated—the record shows that, absent an injunction, Petitioner "faces a likelihood of removal to a third country with no meaningful opportunity to challenge that decision." *Nguyen*, 796 F. Supp. 3d at 737. The Court therefore grants Petitioner's request for an injunction limiting third-country removal.

---

[3] Because the Court grants relief under *Zadvydas*, it does not reach Petitioner's additional grounds for relief. (*See* dkt. # 6 at 25-28.)

ORDER - 8

## 2. Redetention

Petitioner also asks the Court to order that Respondents may not redetain him unless they (1) first obtain a valid travel document to Somalia for him; (2) provide the document to him and his counsel; and (3) offer him the opportunity to depart on his own within two months. (Dkt. # 6 at 28-29.) The current record does not supply sufficient legal authority or factual development to establish constitutional violations in the absence of these particular, prospective procedures, especially where any future effort to redetain Petitioner would be governed by the post-order custody regulations in 8 C.F.R. § 241.13(i). (*See* dkt. # 6 at 13-14 (acknowledging that § 241.13(i) governs revocation of release for noncitizens subject to a final order of removal).) The Court therefore denies Petitioner's request for injunctive relief concerning redetention.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

(1)    Petitioner's petition for writ of habeas corpus (dkt. # 6) is GRANTED in part. Within **twenty-four (24) hours**, Respondents shall release Petitioner from custody on the same conditions that governed his most recent release, and within **two (2) business days**, Respondents shall file a status report confirming Petitioner's release.

(2)    Petitioner's request for permanent injunctive relief concerning future redetention is denied without prejudice.

(3)    Respondents shall not remove Petitioner to any third country absent notice and a meaningful opportunity to respond, consistent with applicable statutes and the requirements of due process in reopened removal proceedings.

//

//

ORDER - 9

Dated this 29th day of July, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge